CHÁVEZ, Chief Justice (dissenting). {67} Defendant knowingly and voluntarily waived his right to cross-examine witness Ray Baca (Baca). Baca’s statement was not admitted in lieu of live testimony except at Defendant’s prompting, and as such, I respectfully dissent. {68} The State produced Baca to testify with the benefit of use immunity. The parameters of the use immunity were defined by the contents of a statement given by Baca to an investigating officer on the night of the shooting in question. The State intended to introduce the statement’s substance through directly questioning Baca, without restricting Defendant from cross-examining him about the statement. Instead of exercising the right to cross-examine Baca concerning the statement, Defendant’s attorney announced his preference for the entire transcript of the statement to go to the jury. Obviously, this strategic decision was prompted by the exculpatory evidence in the statement. As such, I agree with the State’s unrebutted argument that Defendant waived any potential claim under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004) relating to Baca’s statement. I would affirm the trial court on this issue and I am not persuaded by Defendant’s remaining arguments. Therefore, I would affirm his convictions. {69} The dispute over Baca’s statement originated before trial in Defendant’s efforts to prevent the State from introducing evidence that the killing had been gang-related. Defendant argued that there was no foundation for such evidence, but the trial court agreed with the prosecutor that testimony from Baca, along with other foundational testimony, would justify its introduction. Defendant filed a motion to reconsider this judgment, and by the time a hearing was held on the motion, Defendant had been apprised that Baca would refuse to testify to avoid self-incrimination. Baca had previously been convicted of crimes relating to this shooting, and was currently appealing his conviction. Defendant argued that if Baca would not testify, the prosecutor could not introduce his statement at trial because this would violate Defendant’s rights under Crawford, 541 U.S. at 59, 124 S.Ct. 1354. The prosecutor answered that she planned to offer limited use immunity to Baca. Defendant raised no further concerns. {70} Having concluded its discussion of Defendant’s motion to reconsider, the trial court went on to discuss a separate defense motion in limine, the text of which is unavailable to us, in which Defendant apparently sought to disqualify the jury panel. Defendant argued that the jury had been unfairly prejudiced because its questionnaires included details about gangs. Defendant argued that since Baca would not be testifying, the jury would not actually hear evidence at trial about gangs, because introducing the statement without the opportunity to cross-examine would violate Crawford. The prosecutor again explained that [I]n terms of Crawford, [defense counsel] is correct. If Mr. Baca takes the stand, refuses to testify, although that makes him unavailable as a witness, his statement to [the police] was testimonial. I would not be able to walk up and admit it, and I had not intended to do that. Instead ... [Iam seeking] an order compelling testimony and granting use immunity---- Once again, Defendant had no response; he never argued before trial that the grant of limited use immunity would not satisfy his need to cross-examine Baca. {71} As the prosecutor indicated, Baca was present in court during trial, and the prosecution was prepared to call him as a witness. Based on discussions the prosecutor had with Baca’s attorney, she confirmed that Baca intended to invoke his Fifth Amendment privilege. The trial court asked the prosecutor, “[w]hat are you going to be asking of Mr. Baca at this time?” The prosecutor responded that she would seek to compel his testimony, having granted him use immunity for testimony relating to his statement. The prosecutor elaborated: I would ask him if he recalled the interview, did he recall being mirandized or not, and asking very specific questions about what he told her. Where he was, who he was with. What car he was driving. They encountered a black truck. When the black truck turned on Churchill his interview states that they began firing at the Saturn with a weapon, and I believe his statement also says he yelled at them “f— you,” I believe it was, and at that point he was shot in the hand. While on the witness stand, Baca asked the trial court about the penalty for contempt of court. Apparently unsure, the trial court asked counsel to comment. The prosecutor indicated that the penalty could be up to a year. Defendant’s attorney made a vague reference to a pretrial motion regarding Crawford and his inability to cross-examine Baca, which from his perspective led to the State’s legal position, apparently referring to the grant of use immunity. {72} After being satisfied that Baca would invoke his Fifth Amendment privilege, the trial court turned to the issue of use immunity. The prosecutor argued that it would be in the interest of justice if Baca were compelled to testify about his statement to the police, noting that it contained evidence favorable to Defendant. Defendant’s attorney stated that he reiterated his arguments prior to trial “regarding the Crawford problems”: We reiterate our arguments, Judge, made prior to the trial beginning regarding the Crawford problems. We still feel there’s some restriction if the testimony is permitted without the opportunity to fully cross-examine him. We realize the State is attempting to obviate that by seeking the motion, the granting of the motion, which would then make it a fifth amendment problem. But we do not concur in the motion. We still want to be able to fully cross-examine the gentleman if he testifies at all, but we realize that there are certain limitations. The State may have successfully but we are in opposition because we feel it’s too restrictive in cross-examination. This was the only discussion to which Defendant cited in his brief in chief as evidence that he preserved the Crawford issue. Defendant did not point this Court to the discussion he was reiterating, and although I have scoured the record, I have been unable to find any prior discussion relevant to this topic. This explanation was nothing more than an unilluminating repetition of Defendant’s pretrial assertion, to which the prosecutor had agreed, that he was entitled to cross-examine Baca about the statement he gave to the police. Importantly, no one contended that Defendant’s attorney could not cross-examine Baca about the statement. This simply was not a situation where the statement itself was being tendered in lieu of live testimony. Baca was in the courtroom and the trial court was considering whether to compel him to answer the questions the prosecutor intended to ask. {73} In any event, Baca opposed use immunity because he did not believe that his testimony was relevant. The prosecutor rebutted this argument by pointing out that Baca was one of the few witnesses who was directly involved in the incident. Significantly, Defendant’s attorney agreed that the testimony would be relevant. After taking a recess to consult case law, the trial court announced that Baca’s statement was relevant to the case and then granted Baca use immunity. {74} After the trial court announced its decision, Baca’s attorney asked if the prosecutor could simply inquire whether Baca made the statement. The prosecutor explained her preference for asking questions, not just admitting the statement: So what I would prefer to do is let him go over the statement, even keep a copy with him, and then basically just walk through it and say, “Did you talk to Mary Ann Wallace,” in a semi-leading way, “on this date? Did she mirandize you, give you rights? Did you waive the rights?” “Yes, I did.[”] “Did you tell her what happened that day?[”] “Yes, I did.” “And can you tell us who you were with,” which is in the statement, and not go outside of asking him anything that is not in the statement, but basically allowing him to answer instead of me feeding him the answers. Defendant’s attorney then asked the trial court whether the transcript would go to the jury. The trial judge indicated that he did not know. While the prosecutor was explaining how she would question the witness, the court apparently asked Defendant’s attorney, “[w]ell, you want the transcript?” Defendant’s attorney explained that he did want the transcript to go to the jury: I think I do want it. If we are going to get into it, I think the whole thing has to go in. I think the transcript is an accurate transcription, but it seems consistent, and I certainly can’t get anything better off my hearing of the actual tape, so I figure if we will be asking questions, it does capture the excitement, much of the 911 transcript does, of the young men that were, at one point or another, in both vehicles. So I think that would move matters along better. We wouldn’t have to walk him through, “Did you say this, did you say that.” If it goes in, what is exciting or meaningful is the manner in which it’s said. I think as [the State] said, it does help us in the search for truth. Baca’s attorney then interjected that he was still concerned because the prosecution seemed to want to ask questions such as “[i]s this what happened that night,” instead of questions about the statement. Defendant’s attorney then interjected his perspective that it would be less prejudicial to the defense if the statement were introduced with Baca acknowledging its contents, given the trial court’s rulings. What rulings were alluded to by Defendant’s attorney are unclear, since the only ruling at this point was that use immunity would be granted to Baca, and that Baca would be compelled to testify about the contents of his statement to the police. The mechanics for getting the information before the jury remained at issue. The State wanted the standard question-and-answer format, but Baca’s attorney and Defendant’s attorney wanted the statement transcript admitted instead. {75} The prosecutor explained that she did not object to stipulating to the transcript, but astutely inquired “[b]y merely stipulating to the transcript, my next question would be is he then waiving, essentially waiving, his right to cross-examine Mr. Baca by stipulating to the transcript being admitted?” The prosecutor clearly recognized that admitting the statement without cross-examination could raise doubts about whether the Crawford problem had truly been solved. If Defendant wanted the statement admitted, the prosecutor was demanding that he specify that he was voluntarily foregoing cross-examination. {76} Unsure of what Defendant was thinking, the trial court turned to Defendant’s attorney for clarification. Defendant’s attorney said that Defendant was not waiving his argument based on Crawford, although yet again Defendant has not pointed this Court to the argument on which he relies, and none is evident from a review of the record. Because Defendant was not waiving his right to cross-examine Baca, the prosecution pointed out that it could not “merely stipulate to the statement.” The trial court agreed. The prosecutor then went on to state, “[i]n those terms, I would have to have Mr. Baca testify as to what he said and allow Mr. Samore to cross-examine him on that testimony, whatever the questions may be. And obviously, if he got outside of what Mr. Baca testified, then he has a fifth amendment privilege.” {77} This exchange confirms that the State was not restricting Defendant’s right to cross-examine Baca about the statement. This is simply not a Crawford violation.[1] “[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.” Crawford, 541 U.S. at 59, 124 S.Ct. 1354. As the majority points out, Crawford protects the right to cross-examine on the statement. Majority Opinion, ¶ 28. {78} Defendant’s attorney, recognizing that the State would be unwilling to simply admit the statement as evidence without a waiver, quickly made an interjection to find out what the trial court was suggesting by “waiving any cross-examination at this point in the proceedings we could put the statement in and both sides would waive cross?” When the trial court verified that this was indeed what it was thinking, Defendant’s attorney stated unequivocally, “[w]e would be willing to do that.” {79} Although I conclude that this was enough to show that Defendant waived his right to cross-examine Baca about the statement, the trial court exercised greater caution. After Defendant’s attorney indicated that he might want to ask Baca to verify a picture of Baca’s injured hand, the trial court asked, “Do you agree that would satisfy your need to cross?” Defendant’s attorney flatly stated, “[y]es, judge.” Leaving nothing to chance, the trial court went on to ask, “Mr. Samore, I want to be sure on the record that you are comfortable at this point asking that the sole question that you would ask, or that you will be asking of Mr. Baca about this and agreeing to waive further cross?” “At this point I am[,]” replied Defendant’s attorney, although he cautioned that questions made by the prosecution might require him to ask more questions, in which case he would approach the bench before doing so. {80} With this agreement on the record, the jury returned to open court and Baca testified. After Baca identified the statement he made to the investigating officer, the prosecutor announced, “Your Honor, the parties have stipulated to the admission of State’s Exhibit 123 which is the transcript of Mr. Baca’s statement, as given to Detective Mary Ann Wallace on April 16, 2004.” Defendant’s attorney noted his concurrence and Defendant’s concurrence and chose not to ask Baca any questions. {81} Because Baca’s statement was not admitted in lieu of live testimony except with Defendant’s prompting, I would find that Defendant waived his right to cross-examine Baca about the statement. Had Defendant not sought to have the transcript introduced, it is clear from the record that his attorney could have cross-examined Baca about the statement. The Confrontation Clause does not require more, and as such I must respectfully dissent. I CONCUR: PETRA JIMENEZ MAES, Justice. . If Defendant’s concern was the limited scope of Baca’s use immunity, he should have alerted the trial court to this concern with something more than a vague reference to a right to “fully cross-examine.”